UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARLON BARRIOS**, *on behalf of himself and all other similarly situated persons*,<br><br>**Plaintiff,**<br><br>v.<br><br>**SUBURBAN DISPOSAL, INC. CHRISTOPHER ROSELLE, and DANIEL J. ROSELLE**<br><br>**Defendants.** | Civ. No. 2:12-cv-03663 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is a wage and hour case against a waste collection company, Suburban Disposal, Inc., and Suburban's executives, Christopher Roselle and Daniel J. Roselle (together "Suburban"). Named Plaintiff Marlon Barrios's Amended Complaint contains two counts: Count I is a putative collective action claim under the Fair Labor Standards Act ("FLSA"), and Count II is a putative class action claim under the New Jersey Wage and Hour Law ("NJWHL"). Both counts allege a failure to pay overtime at time-and-a-half for hours worked in excess of 40 hours per week. Suburban moves for summary judgment on both counts, arguing that it is exempt from paying time-and-a-half overtime under the FLSA and NJWHL. There was no oral argument. Fed. R. Civ. P. 78(b). Based on a genuine dispute as to material facts, Suburban's motion is **DENIED**.

**I.    PROCEDURAL HISTORY**

On June 14, 2012, Barrios filed a four-count putative class and collection action Complaint, asserting both overtime and minimum wage claims under the FLSA, and overtime and minimum wage claims under the NJWHL. Compl., ECF No. 1. The NJWHL contains a two year statute of limitations. N.J.S.A. 34:11-56a25.1. The FLSA contains a three year statute of limitations in the event of willful violations, which Barrios alleges to have occurred in this case. 29 U.S.C. § 255(a). Accordingly, it appears that Barrios sought to recover under the FLSA for overtime compensation dating back to June 14, 2009, and Barrios apparently sought to recover under the NJWHL for compensation dating back to June 14, 2010.

1

On August 31, 2012, Suburban moved to dismiss the Complaint. ECF No. 7. In its motion, Suburban argued that Barrios's FLSA overtime claim was subject to dismissal under the FLSA's Motor Carrier Act ("MCA") Exemption. Suburban also argued that Barrios's NJWHL overtime claim should be dismissed under a similar exemption called the Trucking Industry Employer Exemption. Because Suburban's exemption arguments relied on facts outside of the pleadings, the Court refused to resolve them on a motion to dismiss. *Barrios v. Suburban Disposal, Inc.*, No. 12-3663, 2013 WL 1504489, at *3 (D.N.J. Apr. 10, 2013). For independent reasons, the Court dismissed without prejudice both the overtime and minimum claims under the FLSA, and the Court also dismissed without prejudice the minimum wage claim under the NJWHL. *Id.* at **2-4. The Court allowed the NJWHL overtime claim to proceed. *Id.* at **2-3.

On May 9, 2012, Barrios filed an Amended Complaint asserting overtime claims under the FLSA and the NJWHL but omitting the minimum wage claims. Am. Compl., ECF No. 22. After Barrios filed the Amended Complaint, the following plaintiffs submitted written consents to opt into Barrios's putative FLSA collective action: Jose Cabrera, George Calderon, Noel Carillo, Jose Cruz, Carlos Duche, Gilder de Leon, Javier Marin, Manual Perez, and Jorge Salazar (the "Opt-In Plaintiffs"). ECF No. 24.

Subsequently, Plaintiffs requested that the case proceed to discovery on the issue of class certification. ECF No. 26. Suburban argued that the parties should, instead, conduct limited discovery on the applicability of the MCA Exemption and the Trucking Industry Employer Exemption. *Id.* The Honorable Mark Falk granted Suburban's request. ECF No. 29.

On September 27, 2013, after the close of limited discovery, Suburban moved for summary judgment, arguing that both the MCA Exemption and the Trucking Industry Employer Exemption applied in this case. ECF No. 52.

## II. BACKGROUND

### A. Suburban's Business

#### 1. Structure of the Company

Unless otherwise noted, there is no genuine dispute about the following facts: Suburban performs solid waste collection services for more than 39 New Jersey municipalities. Roselle Declaration ¶ 4, ECF No. 52-12. Suburban is licensed by the United States Department of Transportation ("DOT"), and its DOT number is 853947. *Id.* ¶¶ 4-5. Suburban employs both drivers and "driver's helpers/loaders," who ride along with Suburban's vehicles and help with loading and unloading. *Id.* ¶ 8. Driver's helpers decide whether waste can safely be transported to a disposal site. *Id.* ¶ 9.

Suburban's driver's helpers work different routes. *Id.* ¶ 11. Some driver's helpers work full-time; others work only a few days per week. *Id.* Full time driver's helpers are generally assigned a specific route that remains the same each day. *Id.* John Roselle, Suburban's President, claims that the additional driver's helpers are randomly assigned,

as needed, on a day to day basis. *Id.* ¶¶ 1, 11. He adds that these additional driver's helpers "could be assigned on any given day to any of Suburban's commercial vehicles or routes." *Id.* ¶ 11. As discussed later, the randomness of the assignment process is an issue that is highly disputed by Plaintiffs.

        2.       Interstate Transportation

Defendants further claim that the "vast majority of the solid waste and recyclables collected by Suburban are disposed of at out of State facilities." *Id.* ¶ 10. Suburban maintains that its crews are "often" required to transport waste across state lines. *Id.* ¶ 13. Suburban maintains that since 2011, its drivers have transported waste from Mahwah to facilities in New York. *Id.* ¶¶ 13-15. Plaintiffs deny this claim, arguing that Suburban has failed to produce any waste manifests or receipts indicating interstate transportation. Pls.' Response to Def.'s Statement of Material Facts Not in Dispute ¶ 14. Suburban also maintains that since 2010 Suburban drivers have transported waste from Dumont and Franklin Lakes to facilities in New York. *Id.* ¶¶ 14-16. Plaintiffs deny this claim, arguing that Suburban has failed to produce any waste manifests or receipts indicating interstate transportation. Pls.' Response to Def.'s Statement of Material Facts Not in Dispute ¶¶ 15-16. Furthermore, Suburban maintains that from 2009 through 2013, Suburban has serviced customers such as Balducci's Food Lover's Market and King's Supermarket in New York, Connecticut, and Maryland. Roselle Declaration ¶ 17; *see also id.* at Ex. D. Plaintiffs note that invoices offered to support this claim fail to indicate that Suburban trucks drove interstate routes while conducting business in New York, Connecticut, and Maryland. Pls.' Response to Def.'s Statement of Material Facts Not in Dispute ¶ 21.

Defendants claim that besides from transporting waste between states, Suburban also delivers waste to New Jersey transfer stations, which Roselle claims "generally" send the waste to out of state disposal sites. Roselle Declaration ¶ 22. In discussing the shipment of waste to out of state disposal sites, Suburban appeals to the waste management plans for the following New Jersey counties in which Plaintiffs worked: Bergen County, Essex County, Hudson County, Morris County, and Passaic County.

        a.       Bergen County

Pursuant to a 2006 Amendment to the Bergen County Waste Management Plan, Bergen County's waste can be disposed of at any licensed facility, regardless of whether the facility is in New Jersey or some other state. Trenk Declaration Ex. E at 4 of 16 to 6 of 16, ECF No. 52-6.

        b.       Essex County

Under the 2006 Update to the Essex County Solid Waste Management Plan, Essex County allows its municipalities to determine how they will dispose of their "processible

solid waste." Trenk Declaration Ex. C at SD04002, ECF No. 52-4. Municipalities can contract with Essex County to dispose of their processible waste at an Essex County facility, which apparently processes the waste into ash before sending it either intrastate or out of state. *Id.* Or, municipalities can deliver their processible waste to two in-state facilities for processing prior to out of state disposal. *Id.*

### c. Hudson County

In February 2009, Hudson County designated Advance Enterprises Recycling, Inc. Transfer Facility ("AER") as Hudson County's transfer station for processible solid waste. Trenk Declaration Ex. G at SD05937, ECF No. 52-8. AER loads the waste on trailers and delivers it to an out-of-state landfill. Trenk Declaration Ex. H at SD06042, ECF No. 52-9. Waste not delivered to AER is delivered to the Keegan Landfill in North Arlington, New Jersey. Trenk Declaration Ex. G at SD05947, ECF No. 52-8.

### d. Morris County

Under the 2008 Morris County Solid Waste Management Plan, Morris County's waste is delivered to one of two in-state transfer stations run by Waste Management of New Jersey ("WMNJ"). Trenk Declaration Ex. A at SD03601, ECF No. 52-2. Upon receipt of the waste, WMNJ is given the right to extract materials, and it is entitled to compensation based on what it extracts. *Id.* at SD03605. Subsequently, WMNJ transports the waste to one of six stations in Pennsylvania, or to additional unidentified facilities. *Id.* at SD03601.

### e. Passaic County

According to its 2006 Solid Waste Management Plan, Passaic County allows each private contractor to choose where it will deliver the waste it collects. Trenk Declaration Ex. F at 10, ECF No. 52-7. In 2005, solid waste from Passaic was brought to 16 disposal facilities spread among New Jersey, New York, Pennsylvania, and Ohio. *Id.* In 2005, the bulk of Passaic's waste, 68%, was delivered to a facility in Pennsylvania. *Id.*

**B. Plaintiffs' Responsibilities at Suburban**

In opposition to the motion for summary judgment, Plaintiffs rely on the declaration of Barrios, as well as the declarations of the following Opt-In Plaintiffs: Cruz, Cabrera, Salazar, and Marin.
Barrios worked for Suburban as a driver's helper from roughly November 2003 until November 2010. Barrios Declaration ¶ 2, ECF No. 54-2. According to his Declaration, Barrios was a full-time worker who typically worked nine to eleven hours per day, five to six days per week. *Id.* ¶¶ 3-4. Barrios maintains that he was randomly assigned routes in his first six months at Suburban, but after that period he was assigned

4

to a "fixed and steady route." *Id.* ¶ 10. In his time at Suburban, Barrios never worked on an interstate route—his routes were exclusively within the State of New Jersey. *Id.* ¶ 11. Suburban's records indicate that from June 2009 through July 2010, Barrios was, with three exceptions, only assigned two routes, Hopatcong and Madison. Ambinder Declaration Ex. J at 12-17, ECF No. 54-10. Suburban's records indicate that from July 2010 until January 2011, Barrios worked these same routes, with just seven exceptions. *Id.* at 17-19.

Opt-In Plaintiff Marin worked for Suburban as a loader and waste collector from roughly December 2003 until May 2011. Marin Declaration ¶ 2, ECF No. 54-4. According to his Declaration, Marin was a full-time worker who typically worked ten hours per day, five days per week. *Id.* ¶¶ 3-4. Marin claims that he was randomly assigned routes in his first two or three months at Suburban, but after that period he was assigned to a "fixed and steady route." *Id.* ¶ 12. Suburban's records indicate that from June 3, 2009 until May 7, 2010, Marin worked exclusively on the Chatham and Woodridge routes. Ambinder Declaration Ex. J at 1-5. Suburban's records indicate that from May 8, 2010 until April 25, 2011, Marin continued to work mostly on those two routes, though on roughly 30 days he worked different routes in various towns including Hohokus, West Orange, and Dumont. *Id.* at 4-11. While Marin originally submitted a declaration stating that he never traveled on an interstate route while working for Suburban, Marin subsequently corrected himself and acknowledged that he twice traveled outside of New Jersey while working on the Mahwah route. Marin Declaration ¶ 8.

Opt-In Plaintiff Salazar worked for Suburban as a loader and waste collector from roughly December 2004 until May 2011. Salazar Declaration ¶ 2, ECF No. 54-5. According to his Declaration, Salazar was a full-time employee who typically worked nine hours per day, six days per week. *Id.* ¶¶ 3-4. Salazar claims that he was randomly assigned routes in his first seven months at Suburban, but after that period he was assigned to a "fixed and steady route." *Id.* ¶ 10. Salazar never traveled on an interstate route while working for Suburban. *Id.* ¶ 8. Suburban's records indicate that with nine exceptions, Salazar worked exclusively on West Orange and Bayonne routes from May 28, 2009 until January 26, 2010. Ambinder Declaration Ex. J at 30-33. Suburban's records indicate that from February 3, 2010 until September 21, 2010, Salazar worked almost exclusively on the Lincoln Park route. *Id.* 33-36. Suburban's records indicate that from September 22, 2010 until February 28, 2011, Salazar worked on a variety of routes. *Id.* at 36-39. Suburban's records indicate that from March 1, 2011 until April 26, 2011, Salazar worked almost exclusively on the Montville route. *Id.* at 39.

Opt-In Plaintiff Cabrera worked for Suburban as a loader and waste collector from roughly November 2003 until November 2011. Cabrera Declaration ¶ 2, ECF No. 42-2. According to his Declaration, Cabrera typically worked nine to ten hours per day, five to six days per week. *Id.* ¶ 6. Cabrera never traveled on an interstate route while working for Suburban. *Id.* ¶ 5. Suburban's records indicate that, between May 28, 2009 through April 7, 2010 Cabrera exclusively drove the same four routes on the same schedule.

Ambinder Declaration Ex. J at 20-24, ECF No. 54-10. From April 2010 until April 2011, Cabrera drove these same routes with just nine exceptions. *Id.* at 24-29.

Opt-In Plaintiff Cruz worked for Suburban as a loader and waste collector from roughly August 2005 until January 2011. Cruz Declaration ¶ 2, ECF No. 54-3. According to his Declaration, Cruz was a full-time employee who typically worked ten to eleven hours per day, five to six days per week. *Id.* ¶¶ 3-4. Cruz claims that he was randomly assigned routes in his first three months at Suburban, but after that period he was assigned to a "fixed and steady route." *Id.* ¶ 10. Suburban's records indicate that from May 28, 2009 until April 27, 2011, Cruz drove mostly routes in Bayonne, Kinnelon, Little Ferry, and West Paterson. Ambinder Declaration Ex. J at 40-50, ECF No. 54-10. During this same period, Cruz also drove routes in towns including Ramsey, River Edge, Chatham, Belleville, and Hopatcong.

Contrary to Plaintiffs' declarations, Suburban maintains that Plaintiffs were not full time employees, and that Plaintiffs "rarely" worked in excess of 40 hours per week. Response to Plaintiffs' Statement of Material Facts Not in Dispute ¶¶ 1-2, ECF No. 57-2. Suburban concedes, however, that besides from Marin, none of the Plaintiffs worked interstate routes during the relevant time period at issue in this case. *Id.* ¶ 17.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

Count I is a claim for overtime under the FLSA. Count II is a claim for overtime under the NWJHL. Suburban moves for summary judgment on Count I, arguing that Plaintiffs are not entitled to time-and-a-half under the FLSA because Plaintiffs fall under the FLSA's MCA Exemption. Suburban also moves for summary judgment on Count II, arguing that Plaintiffs are not entitled to time-and-a-half under the NJWHL because Plaintiffs fall under the NJWHL's Trucking Industry Employer Exemption. As the parties appear to agree that the MCA Exemption and the Trucking Industry Employer Exemption are essentially the same, the Court's analysis focuses only on the MCA Exemption.

6

### A. The MCA Exemption

The FLSA generally provides for overtime at time-and-a-half for hours worked in excess of 40 hours per week. 29 U.S.C. § 207. "It is well settled that exemptions from the FLSA are construed narrowly, against the employer." *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir. 2005). One FLSA exemption is the MCA Exemption, 29 U.S.C. § 213(b)(1).

An employee falls within the MCA Exemption when three factors are satisfied. 29 C.F.R. 782.2. <u>First</u>, an employee must be employed by a carrier subject to the jurisdiction of the Secretary of Transportation. 29 C.F.R. 782.2(a). <u>Second</u>, an employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* <u>Third</u>, the employee must work as driver's helper, loader, or mechanic. 29 C.F.R. 782.2(b)(1). Suburban "bears the burden of proving 'plainly and unmistakably' that [Plaintiffs] qualify for the MCA exemption." *Packard*, 418 F.3d at 250 (quoting *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992)).

Here, there is no dispute that Suburban, a company licensed by the DOT, is subject to the jurisdiction of the DOT. Nor is there any dispute that Plaintiffs are driver's helpers who engage in activities that affect the safety of a motor vehicle. As such, the parties' disagreement is limited to two issues: (a) whether waste constitutes property for purposes of the MCA Exemption, and (b) whether Plaintiffs worked in "interstate commerce." If Suburban is to prevail on its motion, it must demonstrate both that waste is property under the MCA Exemption <u>and</u> that Plaintiffs worked in interstate commerce. Because there is a genuine dispute as to material facts regarding Plaintiffs' work in interstate commerce, Suburban has failed to demonstrate, for purposes of a Rule 56 motion, that the MCA Exemption applies in this case. Accordingly, the Court does not have to address whether waste constitutes property for purposes of the MCA Exemption.

### B. Disputed Fact Issues Prevent the Court From Granting Summary Judgment

The MCA Exemption's interstate commerce requirement can be satisfied in one of two ways: (1) employees can transport property from state to state, or (2) employees can transport property within a single state, but only so long as the intrastate transportation is part of a "practical continuity of movement" in interstate commerce.

#### 1. Transportation of Property From State to State

As noted earlier, the MCA Exemption applies only in the event of interstate commerce. Suburban maintains that Plaintiffs, as individuals, are considered to have engaged in interstate commerce for MCA Exemption purposes because Suburban's

7

business as a whole involves interstate commerce. Suburban is incorrect. The DOT has explained in an opinion letter: "[i]f jurisdiction [under the MCA] is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs." 46 Fed. Reg. 37,902. "Satisfactory evidence" of such a reasonable expectation "would be statements from drivers and carriers, and any employment agreements." *Id.* While the DOT's opinion letter is not binding, *see Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 474 n.10 (5th Cir. 2010), this Court—like the Fifth, Seventh, and Ninth Circuits—nevertheless finds it persuasive. *See id.*at 474-75; *Johnson v. Hix Wrecker Service, Inc.*, 651 F.3d 658, 661 (7th Cir. 2011); *Reich v. American Driver Service, Inc.*, 33 F.3d 1153, 1156 (9th Cir. 1994).

Accordingly, if Plaintiffs did not drive interstate routes, they are all considered to have engaged in interstate commerce for MCA Exemption purposes if Plaintiffs could have reasonably been expected to drive interstate routes. In *Morris v. McComb*, the Supreme Court found that an employee who never drove interstate routes was nevertheless subject to the MCA Exemption because (a) other employees drove interstate routes, and (b) because routes assignments were divided "indiscriminately" among employees. 332 U.S. 422, 423 (1947); *see also Resch v. Krapf's Coaches, Inc.*, No. 11-6893, 2013 WL 4603011, at *6 (E.D. Pa. Aug, 29, 2013) ("In *Morris*, the Supreme Court focused on the indiscriminate nature of the route—the fact that anyone could get assigned an interstate route—to determine that the employees were all exempt [under the MCA]."). On the other hand, in *McGee v. Corporate Express Delivery Systems*, a court held that the MCA Exemption did not apply where employees were assigned routes on a "permanent or quasi-permanent basis, and [where] routes were randomly reassigned only when a driver did not come in to work and his route had to be covered by someone else." No. 1-1245, 2003 WL 22757757, at *7 (N.D. Ill. Nov. 20, 2003).

Suburban takes the position that this case is like *Morris*. It argues that its company drove three interstate routes—Mahwah, Dumont, and Franklin Lakes—and that Plaintiffs could have been assigned to those routes at any time because Suburban's assignment system was random. However, Suburban fails to explain what it means by "random." Does it mean that on any day of any week, any of its driver's helpers could have driven any of Suburban's routes? If so, the evidence seems to cut against Suburban's argument. Barrios, for example, drove the same two routes, with only a few exceptions, for three years. For roughly a year, Marin worked just two routes. Other drivers worked on just a few routes for extended periods of time. This suggests—but does not establish—that Plaintiffs' routes were set on a "quasi-permanent" basis. *See id*. Also supporting a finding that Plaintiffs had quasi-permanent routes is Roselle's declaration, which acknowledges that "full time driver's helpers are generally assigned a specific route that remains the same each day." Roselle Declaration ¶ 9. Though Suburban disputes it, Barrios, Cabrera, Cruz, Marin, and Salazar claim to have been full time employees who regularly worked more than 40 hours per week.

Furthermore, in considering whether Plaintiffs' reasonably could have expected to drive interstate routes, the Court notes that Barrios, Cruz, Cabrera, Marin, and Salazar

8

each worked for Suburban for seven years or more, and that during their time at Suburban only one of them, Marin, ever drove an interstate route.[1] There is no evidence that any Plaintiffs ever serviced one of Suburban's customers in New York, Connecticut, or Maryland. Though Marin went on interstate trips for Suburban twice during his eight-year employment, the Court cannot find, based on these two trips, that all Plaintiffs had a reasonable expectation of driving interstate routes.

Ultimately, while there is no question that Barrios and the four Opt-In Plaintiffs who submitted declarations in this case were, at times, assigned routes they did not normally travel, the Court cannot find as a matter of law that Plaintiffs' route assignments were random. Construing the evidence in the light most favorable to Plaintiffs, the Court cannot find, for purposes of this Rule 56 motion, that Plaintiffs could "reasonably have been expected to make one of the carrier's interstate runs."

### 2. Practical Continuity of Movement

Next, Suburban argues that the MCA Exemption's interstate commerce requirement is satisfied under the "practical continuity of movement" theory. Here, Suburban points to waste collections Plaintiffs made in Bergen, Essex, Hudson, Morris, and Passaic Counties. Based on a genuine dispute as to material fact, the Court cannot find that Suburban's argument succeeds in the context of the instant summary judgment motion.

In *Friedrich v. U.S. Computer Servs*, the Third Circuit recognized that the MCA Exemption's interstate commerce requirement can be satisfied under the "continuity of movement [in interstate commerce] principle." 974 F.2d at 413 n.6. To determine whether items that move in intrastate commerce are in the continuity of movement in interstate commerce, courts consider a shipper's "fixed and persisting intent at the time of the shipment." *Atlantic Indep. Union v. Sunoco*, No. 3-4389, 2004 WL 1368808, at *4 (E.D. Pa. June 16, 2004) (citing *Project Hope v. M/V Ibn Sina*, 250 F.3d 67 (2d Cir. 2001)).

"Whether the shipper has a 'fixed and persisting intent' that the merchandise continue in interstate or foreign commerce from or to an out-of-State origin or destination, via a warehouse or distribution center, is ascertained from all the facts and circumstances surrounding the transportation." *Id.* (quoting *ICC Policy Statement, Motor Carrier Interstate Transportation-From Out-of-State Through Warehouses to Points in Same State* ("*ICC Policy Statement*"), 57 Fed.Reg. 19812 (May 8, 1992)). Factors that indicate "interstate intent" are

(1) no processing or substantial modification of substance occurs at the warehouse or distribution facility;

---

[1] Suburban's summary judgment arguments are directed at Plaintiffs as a group. Suburban does not argue that Marin, as an individual, falls under the MCA Exemption based on his interstate activity on the Mahwah route.

9

> (2) [w]hile in the warehouse, the merchandise is subject to the shipper's control and direction as to the subsequent transportation;
>
> (3) [m]odern systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center;
>
> (4) [t]he shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier;
>
> (5) [t]he warehouse utilized is owned by the shipper; and
>
> (6) [t]he shipments move through the warehouse pursuant to a storage in transit tariff provision.

*ICC Policy Statement.* Suburban has not provided any information suggesting the second, third, fourth, fifth, and sixth factors weigh in its favor. The closest it comes is to deny Plaintiffs' charge that after waste is delivered to regional transfer stations, "Defendants no longer retain any control or interest (monetary or otherwise) in the waste and/or recyclables," Pls.' Statement of Material Facts Not in Dispute ¶ 21. Def.'s Response to Plaintiffs' Statement of Material Facts Not in Dispute ¶ 21. However, Suburban points to no evidence in the record supporting its denial. The second through sixth factors cut against finding that the waste transported by Suburban was in the practical continuity of movement in interstate commerce.

    As for the first factor, the evidence cited by Suburban cuts against finding a practical continuity of movement in interstate commerce for purposes of the instant Rule 56 motion. Based on the evidence before the Court, Morris County extracted materials from waste before shipping it out of state. The Court does not know if other processing went on. And at least some of Essex County's waste was burned before being shipped either out of state or to a New Jersey location.

    Furthermore, a review of "all the facts and circumstances" cuts against a finding of interstate commerce for purposes of the instant motion. Suburban offers no evidence that any of Bergen County's waste has ever been transferred out of state. In the case of Passaic County, Suburban notes that solid waste was delivered to 16 facilities in several states in 2005, but none of the Plaintiffs' claims extend back to 2005. Suburban offers no evidence that any of Passaic County's waste was shipped out of state during the time period relevant to this case. And as for Hudson County, Suburban provides no evidence that the waste it picked up was among the waste Hudson County shipped out of state, as opposed to the waste Hudson County delivered to the Keegan Landfill in North Arlington, New Jersey. As for Essex County, Suburban explains that some of Essex's waste is burned before being delivered to an in-state or an out-of state facility, but

Suburban does not say whether the waste it collected from Essex was actually burned, and it does not say whether, if the waste it delivered was burned, the ash was delivered out of state.

Finally, Suburban argues that its transportation of waste is "interstate in nature from the outset as determined by the State's highly regulated solid waste management program." Reply Br. at 15 n.12, ECF No. 57. Regardless of whether waste management in New Jersey is highly regulated, the county plans Suburban cites simply do not demonstrate a practical continuity of movement in interstate commerce. Accordingly, Suburban has not shouldered its burden on a Rule 56 motion to demonstrate interstate commerce based on a practical continuity of movement theory.

## IV. CONCLUSION

As set forth above, genuine issues as to material fact prevent this Court from finding, as a matter of law, that the MCA Exemption and the Trucking Industry Employer Exemptions apply in this case. Accordingly, Suburban's motion for summary judgment is **DENIED**. An appropriate order follows.

          /s/ William J. Martini
          **WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 11, 2013**