UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLON BARRIOS and ANGEL MORALES individually and on behalf of all other persons similarly situated who were employed by SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE, and/or any other entities affiliated with or controlled by SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE, <br><br>                                                 Plaintiffs, <br>         -against- <br><br> SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE, and/or any other entities affiliated with or controlled by SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE, <br><br>                                                 Defendants. | No. 12-cv-03663 WJM-MF |

**DECLARATION OF LLOYD R. AMBINDER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND ATTORNEYS FEES AND COSTS AND SERVICE AWARDS**

I, Lloyd R. Ambinder, declare as follows:

1.      I am a partner in the firm of Virginia & Ambinder LLP ("V&A") in New York, New York, and Plaintiffs' counsel herein.

2.      I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims in this action and am therefore fully familiar with the facts stated herein.

3.      This declaration is submitted in support of Plaintiffs' unopposed motion for final approval of the proposed settlement as set forth in the Joint Stipulation of Settlement and Release (hereinafter the "Stipulation"). Specifically, Plaintiffs seek an order to (1) approve the settlement

as fair, reasonable, and adequate for both Rule 23 Class Members and FLSA Collective Members, (2) bind all Rule 23 Class Members who have not timely opted out to the Released State Law Claims as set forth in the Stipulation, (3) award Class Counsel attorneys' fees and costs in the amount equal to $300,000.00, (4) award services awards to Named Plaintiffs Marlon Barrios and Angel Morales in an amount equal to $7,500.00 each ($15,000 total), and (5) dismiss the Litigation with prejudice.

## PROCEDURAL BACKGROUND

4.      Before entering into the Stipulation, V&A conducted thorough investigations of Plaintiffs' claims. V&A conducted extensive legal research on the underlying merits, the likelihood of class certification, the likelihood of decertification of the FLSA collective, obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and Defendants' affirmative defenses.

5.      The parties also engaged in significant discovery. Formal discovery included reviewing thousands of pages of documents as well as numerous discussions by Class Counsel with Named Plaintiffs, opt-in plaintiffs and putative class members. Additional discovery was exchanged during settlement negotiations, including extensive payroll and route records for the proposed Class.  In all, Class Counsel reviewed over 7,000 records produced by Defendants including, but not limited to, payroll records, route records, and waste management plans for numerous counties in New Jersey.

6.      Extensive negotiations between the parties ensued over nine months, culminating in a mediation before Magistrate Judge Mark Falk where the parties agreed to a settlement in principle.

## SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL

7. The settlement administrator has provided the following information:

 a. The Court approved Notice and Claim Form and Release (attached as Exhibit A) were distributed by first class mail on May 19, 2015 to 732 FLSA Collective Members and Class Members.

 b. A total of 297 notices distributed by mail were returned as undeliverable.

 c. Skip traces conducted by the settlement administrator that revealed the 16 updated addresses. Notices were re-mailed to these addresses.

 d. 130 individuals filed claim forms with the Settlement Claims Administrator. Plus an additional 25 individuals were already previously deemed Participating Claimants by filing consent to join forms with the Court. The 155 Participating Claimants in this matter amounts to 21% of eligible claimants.

 e. No Class Members elected to opt-out of the settlement

 f. No objections were received from any Class Members.

8. Of the 281 unfound individuals, 30 have opted to participate in the settlement.

9. Settlement payments to all the 155 Participating Claimants totals $912,239.18.

10. On November 24, 2015, a second notice was distributed to each Participating Claimant. The second notice provided each Participating Claimants gross individual settlement amount, and the exact amount being deducted for attorneys fees and service award. Attached hereto as Exhibit B is Named Plaintiff Morales' settlement allocation notice. The Notices distributed to Participating Claimants are identical in form.

## CERTIFICATION OF THE CLASS
## FOR SETTLEMENT PURPOSES IS PROPER

11. Certification of the class members who were employed by Defendants for settlement purposes only is appropriate under Fed. R. Civ. P. 23. Certification of a settlement class is the most efficient, most effective and least costly method of resolving this dispute. Accordingly, Plaintiffs respectfully request that the parties' Settlement Agreement and Proposed Implementing Order for settlement class certification be approved.

*Numerosity*

12. Based upon the mailing list already furnished by Defendant in connection with the FLSA 29 U.S.C. § 216(b) collective certification, as well as representations and documents provided by Defendants, testimony of the Named Plaintiffs and several opt-in Plaintiffs, it is clear that the class is so numerous that joinder of all members is impracticable.

13. According to the class list provided by Defendants there are no less than 700 class members. Accordingly, it is the Plaintiffs' position that it is clear that the class is so numerous that joinder of all members is impracticable.

*Commonality and Predominance*

14. It is the Plaintiffs' position that there are common questions of law and/or fact that predominate over questions affecting only individual members. These common questions include:

Common Questions:

(a) Whether Defendant paid class members for all of the hours actually worked, including work performed in excess of 40 hours in a seven day work week?

(b) Whether Defendant failed to maintain or retain accurate records of the hours worked by the proposed class members?

(c) Whether Defendant complied with New Jersey law pertaining to compensation for hours worked to the proposed members of the class?

15.     It is the Plaintiffs' position that the commonality of these issues is evident. Each of these core issues involves the existence of a common nucleus of operative facts and the proof regarding these issues will be the same. Indeed, the questions of law and fact concerning Defendant's liability to all Class Members: whether Defendants violated New Jersey law; and whether the Class was not paid compensation for hours worked to which they were legally entitled, are not merely common questions but are identical questions.

16.     Based upon Class Counsel's discussions with the Named Plaintiffs, FLSA opt-in plaintiffs, Defendants' counsel and Class Counsel's review of the thousands of pages of time records and payroll records produced during discovery, it is Plaintiffs' position that the harm that the Named Plaintiffs allegedly suffered in this case is identical to the harm allegedly suffered by each and every member of the class – namely, that the Named Plaintiffs and members of the putative class were not paid statutorily required compensation. Clearly, there are substantial common questions of law and fact affecting all Class Members.

17.     The only difference between the claims alleged for each member of the putative class is the time period each worker performed the work. Where differences in the times worked exist, these issues relate solely to the amount of damages for the individual members of the class and do not predominate over the common liability issues detailed above. Perhaps most importantly, settlement damages will be easily calculated by applying a mechanical formula to the class as a whole, so that every Class Member has the requisite informed consent in electing to participate, opt-out or do nothing as part of this proposed settlement.

18.     The proposed agreement calls for the settlement fund to be distributed depending upon the worker's position as a full-time or part-time employee. The fund shall be distributed accordingly:

    A.    A "**Full-Time**" worker shall be defined as a Class/Collective Member that worked 5 or more days per week for 66.67% of the weeks worked during the Relevant Period.

    B.    A "**Part-Time**" worker shall be defined as a Class/Collective Member that is not a Full-Time worker.

C. **"Relevant Period"** means

1. **Suburban Disposal FLSA Collective Members**: From three years prior to the date the opt-in's consent to join form was filed with the Court through March 14, 2014. A schedule of all Suburban Disposal FLSA Collective Members is contained in the annexed Exhibit "1"to the Settlement Agreement.

2. **Louis T. Roselle, Inc. FLSA Collective Members**: In accordance with the tolling stipulation dated June 6, 2014, the Relevant Period is three years prior to June 1, 2014, *plus* the number of days between the mailing of the Notice (as defined in Settlement Agreement Section 1.25) and the date that the Claim Form is returned to the Settlement Claims Administrator pursuant to Settlement Agreement Section 2.5(E) via email, fax or postmarked USPS, through March 14, 2014.

3. **NJLL Settlement Class Members:** employed during the period from June 10, 2010 through March 14, 2014

D. **Full-Time** workers shall be entitled to 5.56% of their W-2 or 1099 reported gross earnings during the Relevant Period.

E. **Part-Time** workers shall only be entitled to payments if they worked five or more days per week and compensated as follows: (i) 5 days of work in a consecutive seven day week shall be entitled to five hours pay at a rate of one-half their regular hourly wage.; (ii) 6-7 days of work in a consecutive seven day week shall be entitled to ten hours pay at a rate of one-half their regular hourly wage.

F. **Full-Time and Part-Time Suburban Disposal FLSA Collective Members** and Louis T. Roselle, Inc. FLSA Collective Members shall be entitled to liquidated damages in an amount equal to 100% of the wages they are entitled to pursuant to paragraphs 3.4(C) or (D) of the Settlement Agreement.

G. Each Authorized Claimant shall contribute a sum equal to fifteen percent (15%) of his or her Individual Gross Amount for payment of professional fees and costs as defined in the Settlement Agreement.

*Typicality*

19. It is Plaintiffs' position that the Named Plaintiffs' claims are typical of the claims of the members of the putative class. The Named Plaintiffs were employed by Defendants to perform similar sanitation work under the supervision and control of the Defendants.

20. It is Plaintiffs' claim in this action that the Named Plaintiffs, like every other member of the class, were entitled to receive compensation for hours worked for their services, but were underpaid these wages. Moreover, it is Plaintiffs' position that the Named Plaintiffs, like every member of the putative class, have been injured by Defendants in the same manner.

*Fair and Adequate Representation*

21. Plaintiffs and their counsel will fairly and adequately represent and safeguard the rights and interests of the class.

22. Class Counsel are experienced litigators who have successfully represented classes in numerous class actions in New York, New Jersey, Ohio, Florida and  To the best of Class Counsel's knowledge, there is no competing litigation already commenced by any member of the class.

23. Class Counsel also meet the adequacy requirement as they are experienced litigators who have successfully represented classes in numerous class actions and have considerable employment law experience.

24. Examples of some of the class and collective actions in which Virginia & Ambinder, LLP have represented plaintiffs include: Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 129-130 (S.D.N.Y. 2011) (Scheindlin, J.); Lujan v. Cabana Management, Inc., Index No. 10-cv-755 (E.D.N.Y. Feb. 1 2011) (Block, J.); Zepeda et al. v. Franari Produce Distributors Inc., et al., (EDNY 10-cv-2588) (Bianco, J.); McBeth, et al. v. Gabrelli Truck Sales Ltd., et al. (EDNY 09cv 4112) (Wexler, J.); Kopacz, et al. v. St. Paul Fire and Marine Insurance Co., et al., Index No.: 111154-2008 (Sup.Ct.N.Y.Co. 2011); Dabrowski v. ABAX Inc., 2010 NY Slip Op

31981U, aff'd 4 A.D.3d 633 (1st Dept. 2011); In re Penthouse Exec. Club Comp. Litig., 2010 U.S. Dist. LEXIS 114743 (S.D.N.Y. Oct. 27, 2010); Brieno v. USI Servs. Group, 2010 U.S. Dist. LEXIS 78672 (E.D.N.Y. Aug. 3, 2010); Cardona v The Maramont Corporation, *2009 NY Slip Op 32695U (Sup.Ct.N.Y.Co. Nov. 12, 2009);* Kudinov v. Kel-Tech Construction Inc., 65 A.D.3d 481 *(1st Dept.* 2009); Morris v. Alle Processing, Corp., Docket No. 08-CV-4874 (E.D.N.Y. Dec. 22, 2009); Nawrocki v. Crimson Construction, Docket No. 08-CV-3153 (E.D.N.Y. June 17, 2009); Cox v. Nap Construction Company, Inc., Index No. 11179/03 (Sup. Ct. N.Y. Co. 2004) (Cahn, J.), aff'd, 10 N.Y.3d 592 (2008); Galdamez v. Biordi Constr. Corp., 13 Misc. 3d 1224A (Sup.Ct.N.Y.Co. June 8 2006), aff'd 50 A.D.3d 357 (Apr. 8, 2008); Gonzalez v. Nicholas Zito Racing Stable, Inc., 2008 U.S. Dist. LEXIS 27598 (E.D.N.Y. Mar. 31, 2008); Guzman v. VLM, Inc., 2008 U.S. Dist. LEXIS 15821 (S.D.N.Y. Mar. 2, 2008); Pajaczek v. Cema Constr. Corp. 2008 NY Slip Op 50386U (Sup.Ct.N.Y.Co. Feb. 21, 2008); De La Cruz v. Caddell Dry Dock & Repair Co., Inc., Index No.: 26220-2002 (Sup.Ct. Bronx.Co. Jan. 9, 2007); Brandy v. Canea Mare Construction, Inc., 4 A.D.3d 512 (2nd Dept. 2006); Rodriguez v. Apple Builders & Renovators, Inc., et al., Index No.: 114971-2005 (Sup.Ct.N.Y.Co. Nov. 1, 2006); Hoffman v. New York Stone Co., Index No.: 111823-2005 (Sup.Ct.N.Y.Co. Sept. 29, 2006); Wysocki v. Kel-Tech Construction, Inc., Index No.: 603591-2003 (Sup.Ct.N.Y.Co. Sept. 26, 2005); Velez v. Majik Cleaning Serv., 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 19, 2005); Alfaro v. Vardaris Tech, Inc., 69 A.D.3d 436 (1st Dept. 2010); Barone v. Safway Steel Products, Inc., 2005 WL 2009882 (E.D.N.Y. 2005); Brunson v. City of New York, 94 Civ. 4507 (S.D.N.Y.); Andrejuk v. National Environmental Safety Co. Inc., 94 Civ. 4638 (S.D.N.Y.); Pesantez v. Boyle Environmental Services, Inc., Index No. 128988/93 (Sup. Ct. N.Y. Co. 1998) (Cahn, J.), *aff'd* 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dept. 1998); Sullivan v. True Plumbing and Heating

8

Corp., et al., Index No. 600409/95 (Sup Ct. N.Y. Co. 1997) (Gammerman, J.), *aff'd sub. nom.*, Sullivan v. International Fidelity Co., 225 A.D.2d 128, 679 N.Y.S.2d 391 (1st Dept. 1998).

25.     Further, Virginia & Ambinder, LLP has successfully represented thousands of workers in hundreds of employment and wage and hour cases in federal and state courts in non-class action cases.

26.     The interests of the class will also be fairly and adequately protected by the Named Plaintiffs. The Named Plaintiffs have a real and direct pecuniary interest in pursuing this action having spent time working for Defendant and who were allegedly underpaid for their services.

27.     The Named Plaintiffs, like all members of the putative class, seek to recover compensation for hours worked that they were allegedly underpaid while employed by Defendant.

28.     Additionally, to the best of Class Counsel's knowledge, no other individuals employed by Defendant have instituted an action for underpayment of wages. Accordingly, there is no competing litigation already commenced by any member of the class.

*Superiority*

29.     It is Plaintiffs' position that a class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy. The alternative would be to require no less than 600 individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's time and resources.

30.     Certification of the class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards upon Defendant. There are no difficulties likely to be encountered in the management of this action as a class action.

31. Given the expense of litigation and the relatively small size of numerous individual claims, many members of the class simply could not afford to pursue redress absent class treatment. Given these facts, a class action is superior to other available methods of adjudicating this controversy.

32. Indeed, the existence of over 600 class members is, in and of itself, testament to both the impracticability and inefficiency of prosecuting or defending separate actions. There will be few difficulties in managing a class action based upon the claims herein, particularly when compared to the complications of managing so many separate actions.

33. The parties have reached a proposed settlement which Plaintiffs believe represents a significant recovery given the potential damages and the substantial risks if the case proceeds to trial.

34. The parties devoted the better part of nine months attempting to settle this action. To this end, Defendants' produced almost 10,000 pages of payroll and time records, Plaintiffs' Counsel conducted interviews with putative class and collective members, Defendants produced data and other information for the proposed Class in response to discovery demands, and counsel for the parties participated in multiple in-person and telephonic settlement conferences, the results of which have culminated in this proposed settlement.

35. The settlement was reached only after substantial discovery and a prolonged period of negotiation.

### APPLICATION IN SUPPORT OF ATTORNEYS' FEES AND COSTS AND APPROVAL OF SERVICES AWARDS

36. No Class Member has objected to the requested attorneys' fees, expense reimbursement, or service awards to Plaintiffs.

37. Counsel spent significant effort to achieve the $912,239.18 settlement. Class

Counsel conducted thorough investigations of Plaintiffs' claims, including conducting extensive legal research on the underlying merits, the likelihood of class certification, the likelihood of decertification of the FLSA collective, obtaining liquidated damages and an extended FLSA statute of limitations, joint employer liability, equitable tolling, the proper measure of damages, and Defendants' affirmative defenses. There was significant motion practice in this case. Class Counsel successfully opposed Defendants' motions to dismiss and for summary judgment on the Motor Carrier Act issue. Class Counsel successfully moved for conditional certification of the FLSA collective and successfully moved to amend the complaint to add a joint employer Defendant. Class Counsel also spent considerable time on formal discovery, included drafting demands and responding on behalf of Named Plaintiff and certain Opt-in Plaintiffs, and reviewing thousands of pages of documents. Class Counsel also engaged in ongoing communications with Named Plaintiffs and numerous opt-in plaintiffs, and putative class members throughout the litigation. Class Counsel reviewed additional discovery on behalf of class members exchanged during settlement negotiations and created extensive audits to determine damages for settlement purposes. Class Counsel successfully negotiated this settlement after numerous in person and telephonic settlement discussions, and drafted the settlement documents, including the motion for preliminary approval and this motion for final approval.

38.    In performing these tasks, V&A expended approximately 900.83 hours of attorney, paralegal, and staff member time for a lodestar total of $213,281.74.  Each of these hours was recorded contemporaneously when the work was performed.

39.    Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work

11

performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.

40.     Class Counsel also expects to spend considerable time preparing for and attending the final fairness hearing and administering the settlement in the future. In Class Counsel's experience, based on the number of Class Members and Participating Claimants, this work will include responding to hundreds of inquiries regarding the settlement and settlement checks, requiring a substantial and ongoing commitment.

41.     Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.

42.     Class Counsel are experienced litigators who have successfully represented classes in numerous class actions and have considerable experience in labor law cases.

43.     Class Counsel has obtained final approval of numerous class-wide settlements in the past five years. *See e.g.,* Barry v. SEB Service of New York, Inc., 11-CV-5089(MDG) (EDNY Nov. 12, 2015); Macaluso v. Woodbury International, Inc., Index No. 3216/2012 (Sup. Ct., Nassau Cty., Sept. 9, 2015); Chhab v. Montclair Hotels GCNY, LLC, Index No. 2358/2012 (Sup. Ct. Nassau Cty., July 14, 2015); Lopez v. Bethpage Associates, Index No. 003465/2012 (Sup. Ct. Nassau Cty. Aug. 22, 2015); Parada v. Westbury Manor Enterprises, Inc., Index No. (Sup. Ct. Nassau Cty., July 1, 2014); In re: Penthouse Executive Club Compensation Litigation, 10-CV-1145 (KMW) (S.D.N.Y. Jan. 14, 2014); Chavarria v. Crest Hollow Country Club at Woodbury, Inc., Index No. 017464/2011 (Sup. Ct. Nassau Cty., Comm. Div., Dec. 13, 2013); Khaimov v. JEM Caterers of Roslyn, LLC, Index No. 3215/2012 (Sup. Ct. Nassau Cty., Oct. 16, 2013); Ruiz v. Scotto's Smithtown Restaurant Corp., Index No. 600317/2010 (Sup. Ct. Nassau

Cty., June 17, 2013); Toledo et al. v. DCJ Catering Corp., Index No. 600994/2011 (Sup. Ct. Nassau Cty., Dec. 13, 2013); McBeth v. Gabrielli Trucking, 09-CV-4112(LDW) (E.D.N.Y. 2011).

44.     Class Counsel also requests $2,474.31 for costs such as court and process server fees, postage and courier fees, costs to the administrator for sending notice and processing consent to join forms from the FLSA collective, transportation, discovery costs, photocopies, and legal research.  Class Counsel's request for costs also includes a payment of $10,102.00 to the settlement administrator. These expenses were incidental and necessary to the representation of Plaintiffs and the Class.  Contemporaneous expense records and claims administrator bill is annexed hereto as Exhibit C.

45.     The vast majority of the hours billed by V&A attorneys were billed by attorneys Lloyd Ambinder, Jack Newhouse, and Leonor Coyle.

46.     Founding partner Lloyd Ambinder is a 1989 graduate of Brooklyn Law School and has exclusively practiced as an attorney in litigation of wage and hour claims.  Lloyd has litigated in excess of 500 wage & hour cases, on behalf of at least 20,000 workers, including numerous high profile class actions that have been reported in the New York Daily News, the New York Post and the New Jersey Star Ledger.  Lloyd has also argued a number of first impression cases which have had a lasting influence on employment law in New York and New Jersey.  Lloyd has been a panelist at symposiums sponsored by the National Alliance For Fair Contracting, the National Conference of Unions and Employee Benefit Funds, the New York County Lawyer's Association, and the Nassau County Bar Association, where he lectured on public contracting and labor law, class actions, and prevailing wage and overtime law.  Lloyd is rated as an "AV

Preeminent Attorney" by Martindale Hubbell for Ethical Standards and Legal Ability. Mr. Ambinder bills at a rate of $525.00 per hour, and billed 91.10 hours in this action.

47.     Associate Leonor Coyle is a 2006 graduate of Fordham University School of Law. Ms. Coyle joined V&A in 2009. Ms. Coyle is fluent in Spanish and regularly speaks about employment issues facing immigrant populations at the Mexican, Guatemalan, Ecuadoran, El Salvadoran, and Honduras consulates. Prior to joining V&A, Leonor worked as an Assistant District Attorney for the Suffolk County District Attorney's Office. She has extensive courtroom experience, and has tried numerous bench and jury trials. Ms. Coyle bills at a rate of $395.00 and billed 33.50 hours in this action.

48.     Associate Jack Newhouse has been employed by V&A since 2012, first as a paralegal while he obtained his law degree at St. John's Law School, and as an attorney since his admission in 2013. Prior to joining V&A, Mr. Newhouse interned for the National Labor Relations Board of Region Two and the Equal Employment Opportunity Commission. Mr. Newhouse has been published by Forbes for his article on the impact of unpaid internship lawsuits on the internship job market. Mr. Newhouse's billing rate at the time he started working on the case has increased from $175 to $295.00 per hour. Mr. Newhouse has worked 413.4 hours on this case.

49.     V&A paralegals and support staff bill out at a rate of $90.00 to $125.00 per hour.

50.     Numerous courts have approved the same or similar hourly rates for V&A attorneys, paralegals, and support staff. *See e.g.* Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (Judge Shira A. Scheindlin approving V&A partners at $550 per hour, associates at $395.00 per hour, and paralegals at $125.00 per hour); Garcia et al. v. The Executive Club (S.D.N.Y. 10-cv-1545) (Judge Stein approving same hourly wage rates);

Sandoval et al. v. Galaxy Gen. Contr. Corp., et al., No. 10-CV-5771 (S.D.N.Y. Aug. 23, 2013) (Judge Gardephe approving same); Aparicio v. Iguana New York LTD. (SDNY 11-cv-1830) (Judge Pauley approving V&A partners at $550 per hour, associates at up to $425 per hour, and paralegals at $125 per hour); Sandoval et al. v. Galaxy Gen. Contr. Corp., et al., (S.D.N.Y. 10-CV-5771) (Judge Gardephe approving same hourly wage rates); Perez et al. v. AC Roosevelt Food Corp. et al. (EDNY 10-cv-4824) (in contested fee application, Judge Gleeson approving hourly rates of $525.00 for partners, $395.00 for associates, $225.00 for accountants, and $125.00 for paralegals); Kalloo v. Unlimited Mech. Co. of NY, 977 F. Supp. 2d 209 (E.D.N.Y. 2013) (in contested fee application after successful bench trial, Judge Gershon approving V&A's voluntarily reduced billing rates of $495.00 for partners, $325.00 for associates, and $100.00 for paralegals); Paguay v. Barbasso, Inc., (S.D.N.Y. 11-CV-6266) (in contested fee application after successful jury trial, Judge Caproni approving $525.00 for partners, $365.00 for associates, $200.00 for junior associates, and $125.00 for paralegals); McBeth, et al. v. Gabrelli Truck Sales Ltd., et al. (EDNY 09-cv-4112) (Judge Wexler approving hourly rates of V&A partners at $495.00 per hour, of counsel at $425.00 per hour, associates at $325 to $395 per hour, and paralegals at $95.00 to $150.00 per hour ).

Dated: New York, New York
   January 6, 2016

VIRGINIA & AMBINDER, LLP

_____/s/_____
   Lloyd Ambinder, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel : (212) 943-9081
Fax: (212 ) 943-9082
lambinder@vandallp.com