UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLON BARRIOS and ANGEL MORALES individually and on behalf of all other persons similarly situated who were employed by SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE, and/or any other entities affiliated with or controlled by SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE,<br><br><div align="right">Plaintiffs,</div><br><div align="center">-against-</div><br>SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE, and/or any other entities affiliated with or controlled by SUBURBAN DISPOSAL INC., LOUIS T. ROSELLE, INC., CHRISTOPHER ROSELLE, DANIEL J. ROSELLE, and LOUIS ROSELLE,<br><br><div align="right">Defendants.</div> | No. 12-cv-03663WJM-MF |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CERTIFICATION OF THE
SETTLEMENT CLASS, APPOINTMENT OF
PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF FEES AND COSTS,
AND SERVICE AWARDS**

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………….…………1

PROCEDURAL BACKGROUND……………………………..…………………………..…….1

I.      Litigation ………………………………………………………………...…….1

II.     Investigation and Discovery………………………...…………….…………2

III.    Settlement Negotiations……………………….…………………..........…………….…..2

SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL …..………………………....3

I.      Notice Distribution ………..…………………………………………….…………3

II.     Participating Claimants …..………………………………………………3

ARGUMENT ……………………………………………...........................................5

I.      The Settlement Class Meets the Legal Standard for Class Certification ………………….…..5

        A.  Numerosity………………………………………………...…………….…….5

        B.  Commonality………………………………………………………………..…6

        C.  Typicality…………………………………………………...……...…………7

        D.  Fair and Adequate Representation…………………………………………7

        E.  Predominance and Superiority……………………………………...……….8

II.     The Proposed Settlement Is Entitled to an Initial Presumption of Fairness………………....9

III.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
        Approved in All Respects ……………………………………………………..10

        1.  Litigation Through Trial Would be Complex, Costly,
            and Long (*Girsch* Factor 1)……………………………….……………....10

        2.  The Reaction of the Class Has Been Positive (*Girsh* Factor 2) …..………...………11

3.   Discovery Has Advanced Far Enough to Allow the Parties  to Resolve the Case Responsibly (*Girsh* Factor 3) …………………………………………….…….12

4.   Plaintiffs Would Face Real Risks if the Case Proceeded  (*Girsh* Factors 4 and 5) …….13

5.   Maintaining the Class Through Trial Would not Be Simple (*Girsh* Factor 6) …………14

6.   Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Girsh* Factor 7) …………………...……………….……………….......14

7.   The settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation  (*Girsh* Factors 8 and  9) …………………………...……….14

8.   Additional Factors …………………………………………………………16

IV.   Final Certification of the FLSA Collective .......………………………….……………..18

APPLICATION FOR ATTORNEYS' FEES AND SERVICE AWARDS …………………………18

I.   Class Counsel is Entitled to A Reasonable Fee of 31.5% of the Settlement Fund …………..19

II.   The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Third Circuit …………………………………………....19

1.   Size of the Fund and Number of Persons Benefitted…………………………….…20

2.   Presence or Absence of Substantial Objections ………………………………………20

3.   Skill and Efficiency of Class Counsel ………………………………………………21

4.   Hours Worked and Risk of Non-Payment……………………………………..……21

5.   Awards in Similar Cases …………………………………………………………23

6.   Lodestar Cross-Check …………………………………………………………....23

7.   Reimbursement of Expenses ……………………………………………….……….24

III.   The Requested Service Awards Are Reasonable and Should Be Approved ……………....…24

CONCLUSION…………………………………………………….……….………  27

## TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)..............................................................................8

*Bell At. V. Bolger*,
2 F.3d 1304 (3d Cir. 1993)....................................................................11

*Bernhard v. TD Bank, N.A.*,
2009 U.S. Dist. LEXIS 92308 (D.N.J. 2009) .........................................6, 9

*Bredbenner v. Liberty Travel, Inc.*,
2011 U.S. Dist. LEXIS 38663 (D.N.J. 2011) ................................... *passim*

*Barnes v. American Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998)....................................................................7

*Dewey v Volkswagen of Am.*,
728 F Supp. 2d 546 (D.N.J. 2010) ........................................................23

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010).....................................................................11

*Frank v. Eastman Kodak, Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).............................................................25

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir.1975)..................................................... *passim*

*Guippone v. BH S&B Holdings, LLC*,
2011 WL 5148650 (S.D.N.Y. 2011).......................................................25

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000).....................................................................20

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
213 F.3d 124 (3d Cir. 2000)........................................................................7

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987).......................................................................6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir 2001)...........................................................21, 23, 25

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)......................................................................................9, 11, 15, 23

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F3d 768 (3d Cir 1995).......................................................................................................19

*In re Indep. Energy Holdings PLC Sec. Litig.,*
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ..................................................................................24

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.,*
2009 US Dist LEXIS 60790 (ED. Pa. 2009) ..........................................................................9

*In re Pet Food Prods. Liab. Litig.,*
629 F3d 333 (3d Cir 2010)..................................................................................................5, 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
148 F.3d 283 (3d Cir. 1998).......................................................................................... *passim*

*In re Rite Aid Corp. Sec. Litig.,*
396 F3d 294 (3d Cir. 2005)....................................................................................................20

*In re School Asbestos Litigation,*
789 F.2d 996 (3d Cir. 1986)....................................................................................................6

*In re SmithKline Beckman Corp. Sec. Litig.,*
751 F. Supp. 525 (E.D. Pa. 1990) ...................................................................................23, 25

*In re Warfarin Sodium Antitrust Litig.,*
148 F.3d 283 (3d Cir. 1998)......................................................................................6, 9, 12, 15

*Lenahan v Sears, Roebuck & Co.,*
2006 US Dist LEXIS 60307 (D.N.J. 2006) ........................................................................9, 21

*Lusardi v. Xerox Corp. (Lusardi I),*
118 F.R.D. 351 (D.N.J. 1987).................................................................................................17

*Lusardi v. Lechner (Lusardi II),*
855 F.2d 1062 (3d Cir. 1988)..................................................................................................17

*McKenna v. Champion Intern. Corp.,*
747 F.2d 1211 (8th Cir. 1984) ................................................................................................18

*McMahon v Olivier Cheng Catering & Events, LLC,*
2010 US Dist LEXIS 18913 (S.D.N.Y. 2010). .......................................................................18

*Milliron v T-Mobile USA, Inc.*,
2009 US Dist LEXIS 101201 (D.N.J. 2009) ............................................................10

*Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994).............................................................................................6

*Parker v. Jekyll & Hyde Entm't Holdings*, LLC,
2010 WL 532960 (S.D.N.Y. 2010) ..........................................................................26

*Reyes v. Altamarea Grp., LLC*,
2011 WL 4599822 (S.D.N.Y. 2011).........................................................................26

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................................................................................25

*Schwartz v. Avis Rent a Car Sys.*, LLC,
2014 U.S. Dist. LEXIS 121322 (D.N.J. 2014) ..........................................................8

*Sewell v. Bovis Lend Lease, Inc.*,
2012 WL 1320124 (S.D.N.Y. 2012).........................................................................25

*Sperling v. Hoffman-La Roche, Inc.*,
862 F.2d 439 (3d Cir. 1888) aff'd, 493 U.S. 165 (1989)......................................17, 18

*Velez v. Majik Cleaning Serv., Inc.*,
2007 WL 7232783 (S.D.N.Y 2007)...........................................................................24

*Wetzel v. Liberty Mut. Ins. Co.*,
508 F.2d 239 (3d Cir. 1975).........................................................................................7

*Yong Soon Oh v. AT&T Corp.*,
225 F.R.D. 142, 152 (D.N.J. 2004)............................................................................21

**STATUTES**

Federal Statues

Fed. R. Civ. P. 23., *et seq.*...................................................................................*passim*

29 U.S.C. § 216(b), *et seq.*...................................................................................1, 14

State Statues

New Jersey Statutes §§ 34:11-56a4, *et seq.*..................................................................1

**SECONDARY SOURCES**

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS,
§§ 11.22, 38, 41 (4th ed. 2002)............................................................................................9, 26

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*,
10 Emp. Rts. & Emp. Pol'y J. 395 (2006)..............................................................................25

## INTRODUCTION

Plaintiffs submit this memorandum of law in support of their unopposed motion for final approval of the proposed settlement as set forth in the Joint Stipulation of Settlement and Release (hereinafter the "Stipulation"). Specifically, Plaintiffs seek an order to (1) approve the settlement as fair, reasonable, and adequate for both the NJJ Settlement Class ("Rule 23 Class")[1] and FLSA Collective Members, (2) bind all Rule 23 Class Members who have not timely opted out to the Released State Law Claims as set forth in the Stipulation, (3) award Class Counsel attorneys' fees and costs in the amount equal to $300,000.00, (4) award services awards to Named Plaintiffs Marlon Barrios and Angel Morales in an amount equal to $7,500.00 each ($15,000 total), and  (5) dismiss the Litigation with prejudice.

On April 9, 2015, this Court took the first step in the settlement approval process by granting preliminary approval of the settlement as set forth in the Stipulation, directing that notice be distributed to Rule 23 Class Members and FLSA Collective Members, and setting the date for the final fairness hearing. [See Docket No. 110]. Rule 23 Class Members and FLSA Collective Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. For the reasons stated below, it is respectfully submitted that this Court should grant final approval.

## PROCEDURAL BACKGROUND

### I.       The Litigation

This is an action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b), New Jersey Statutes §§ 34:11-56a4 *et seq.* to recover unpaid wages and overtime compensation allegedly owed to Named Plaintiffs and all similarly-situated persons employed by

---

[1] NJLL Settlement Class is defined in the settlement agreement as "all drivers, driver's helpers, waste collectors, loaders that were employed by Defednatns from June 14, 2010 to the present and whose settlement is limited to claims under New Jersey Statute §§ 34:11-56a4 *et seq.*" [*see* Settlement Agreement at Section 1.21, at Docket No. 107, Document 2].

Defendants in the waste carting industry.

Defendants asserted eighteen (18) separate affirmative defenses, including that Plaintiffs are exempt from federal and state overtime requirements pursuant to the Motor Carrier Act and "trucking industry employer" exemptions.

On December 11, 2013, this Court granted Plaintiffs' motion for collective certification and authorized publication of notice to 702 potential opt-ins. In response to the notice, Seventy-two individuals filed consents to join the action.

## II.        Investigation and Discovery

Before entering into the Stipulation, Class Counsel conducted thorough investigations of Plaintiffs' claims. They conducted extensive legal research on the underlying merits, the likelihood of class certification, the likelihood of decertification of the FLSA collective, the probability of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and Defendants' affirmative defenses. Ambinder Decl. ¶¶ 4, 37.

The parties also engaged in significant discovery. Formal discovery included reviewing thousands of pages of documents, including, but not limited to, payroll records, route records, and the waste management plans for numerous counties within the State of New Jersey.  In addition, Class Counsel engaged in numerous discussions with the Named Plaintiffs, opt-in plaintiffs and putative class members. Ambinder Decl. ¶¶ 5, 37. Additional discovery was exchanged during settlement negotiations, including extensive data relating to the proposed Class. *Id*.

## III.        Settlement Negotiations

The parties devoted the better part of nine months attempting to settle this action.  To this end, Defendants' produced over 7,000 pages of payroll and time records; Plaintiffs' Counsel conducted interviews with putative class and collective members, Defendants produced data and other information for the proposed Class in response to discovery demands, and counsel for the

parties participated in multiple in-person and telephone settlement conferences, including a mediation before Magistrate Judge Mark Falk, which ultimately resulted in this proposed settlement.  *See* Ambinder Declaration ¶¶ 5-6, 37.

## SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL

### I.    Notice Distribution

Pursuant to this Court's April 9, 2015 Order preliminarily approving the settlement, the Court-approved Notice of Class and Collective Action Lawsuit and Fairness Hearing ("Notice"), and the Claim Form and Release were distributed by first class mail on May 19, 2015 to over 700 FLSA Collective Members and Rule 23 Class Members. Ambinder Decl. ¶ 7. As set forth in the Stipulation, Class Members consist of all individuals employed by Suburban Disposal, Inc. and Louis T. Roselle, Inc. as drivers, driver's helpers, waste collectors, and loaders from June 14, 2010 through March 14, 2014.

A total of 297 notices distributed by mail were returned as undeliverable by the post office. Ambinder Decl. ¶ 7.  The claims administrator performed a skip trace on the returned notices, which only revealed better addresses for 16 Class Members. Ambinder Decl. ¶ 7. The fact that such few addresses were found after a skip trace was performed by the claims administrator supports a finding that it will be very difficult, if not impossible, to track down class members that did not receive the notice.  Notably, 30 Class Members whose notices were returned in the mail filed opt-in forms, which supports a finding that the instant settlement was discussed among Class Members. Ambinder Decl., ¶ 8.

### II.    Participating Claimants

A total of 155 individuals have opted to participate in the settlement, which is approximately 21% of eligible claimants. Ambinder Decl. ¶ 9.

Each Participating Claimant will receive a Settlement Amount in accordance with the

3

following definitions and formula:

A.   A "**Full-Time**" worker shall be defined as a Class/Collective Member that worked 5 or more days per week for 66.67% of the weeks worked during the Relevant Period.

B.   A "**Part-Time**" worker shall be defined as a Class/Collective Member that is not a Full-Time worker.

C.   **"Relevant Period"** means:

1.   **Suburban Disposal FLSA Collective Members**: From three years prior to the date the opt-in's consent to join form was filed with the Court through March 14, 2014.   A schedule of all Suburban Disposal FLSA Collective Members is contained in the annexed Exhibit "1."

2.   **Louis T. Roselle, Inc. FLSA Collective Members**: In accordance with the tolling stipulation dated June 6, 2014, the Relevant Period is three years prior to June 1, 2014, *plus* the number of days between the mailing of the Notice (as defined in Section 1.25) and the date that the Claim Form is returned to the Settlement Claims Administrator pursuant to Section 2.5(E) via email, fax or postmarked USPS, through March 14, 2014.

3.   **NJLL Settlement Class Members**: The Relevant Period is from June 10, 2010 through March 14, 2014.

D.   **Full-Time** workers shall be entitled to 5.56% of their W-2 or 1099 reported gross earnings during the Relevant Period.

E.   **Part-Time** workers shall only be entitled to payments if they worked five or more days per week and compensated as follows: (i) 5 days of work in a consecutive seven day week shall be entitled to five hours pay at a rate of one-half their regular hourly wage; (ii) 6-7 days of work in a consecutive seven day week shall be entitled to ten hours pay at a rate of one-half their regular hourly wage.

F.   **Full-Time and Part-Time Suburban Disposal FLSA Collective Members and Louis T. Roselle, Inc. FLSA Collective Members** shall be entitled to liquidated damages in an amount equal to 100% of the wages they are entitled to pursuant to paragraphs 3.4(C) or (D) of the Settlement Agreement.

G.   Each Authorized Claimant shall contribute a sum equal to fifteen percent (15%) of his or her Individual Gross Amount for payment of professional fees and costs as defined herein.

*See* Ambinder Declaration ¶ 18.

4

Settlement payments to all 155 Participating Claimants totals $912,239.18. Ambinder Decl. ¶ 9.

## ARGUMENT

### I.       The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *In re Pet Food Prods. Liab. Litig.*, 629 F3d 333, 341 (3d Cir 2010). On April 9, 2015, the Court preliminarily certified the settlement class consisting of all individuals who worked for Defendants as drivers, driver's helpers, waste collectors, and loaders from June 14, 2010 through March 14, 2014. The Court should now grant final certification because the settlement meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Plaintiffs respectfully request that the Court certify the Rule 23 Class for purposes of settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3).

### A.       Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates the potential

5

number of plaintiffs exceeds 40" then the numerosity requirement is met. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). The numerosity requirement is easily satisfied because there were over 700 Class Members on the Class Member Mailing List provided by Defendants. Ambinder Decl., ¶ 13.

### B.      Commonality

The commonality requirement is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (*citing In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166 (2d Cir. 1987); *see also Bernhard v. TD Bank, N.A.*, 2009 U.S. Dist. LEXIS 92308, 10 (D.N.J. 2009). The burden to meet the commonality requirement is "low" and "easily met in most cases because all that is required is one common issue." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, 17 (D.N.J. 2011) (*citing Neal*, 43 F.3d at 56); *In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3d Cir. 1986) ("the threshold of commonality is not high.").

Named Plaintiffs and Class Members worked as drivers, driver's helpers, waste collectors, and loaders for Defendants. They all allege that they were paid a flat daily rate of pay, so when they would work more than forty hours in a week, they did not receive overtime compensation in an amount equal to one and one half times their regular rate. Here, the common issues include whether Defendants maintained a policy and practice of paying Plaintiffs a flat wage, without an additional overtime premium for work performed over forty hours in a week. Ambinder Decl., ¶¶ 14-18. The legal and factual claims in this case are nearly identical to those alleged in *Bredbenner v Liberty Travel, Inc.*, where the Court found commonality exists and certified the action under Rule 23 for purposes of settlement. *See Bredbenner,* at *18 (The overtime claims in *Bredbrenner* were even more individualized as they implicated four different state laws).

6

Accordingly, Plaintiffs easily satisfy the commonality requirement.

### C.     Typicality

Rule 23(a) requires that the Named Plaintiffs' claims be "typical" of the proposed class. The typicality requirement "does not mandate that all putative class members share identical claims," and "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to claims of the class members, and if it is based on the same legal theory." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, Named Plaintiffs and Class Members all seek the exact same relief, unpaid overtime compensation. Named Plaintiffs and Class Members all allege that they were subject to the same unlawful policy and practice of being paid a flat rate of pay without receiving one and one-half times their regular rate of pay when they worked over forty hours in a week. Because Named Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.

### D.     Fair and Adequate Representation

Rule 23(a)(4) requires that the Named Plaintiffs be in a position to adequately protect the interests of the members of the class. The adequacy of representation prong involves a two-step inquiry: (1) whether Class Counsel is qualified, and (2) whether any conflict or antagonistic interests exist between the Named Plaintiffs and the Class Members. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

There is no evidence that the Named Plaintiffs' and class members' interests are at odds. Additionally, to the best of Class Counsel's knowledge, there is no competing litigation already commenced by any member of the class. Ambinder Decl. ¶ 25. Class Counsel also meet the adequacy requirement as they are experienced litigators who have successfully represented

classes in numerous class actions and have considerable employment law experience. Ambinder Decl. ¶ 24 (listing cases).

### E.     Predominance and Superiority

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied when "the issues common to the class predominate over individual issues . . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311. Where common issues which determine liability predominate, calculating damages on an individual basis does not prevent an otherwise valid certification. *Schwartz v. Avis Rent a Car Sys.*, LLC, 2014 U.S. Dist. LEXIS 121322, 22 (D.N.J. 2014) (*citing Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000)).

Rule 23(b)(3) also requires that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Courts are to consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action." Fed. R. P. 23(b)(3). Courts also look to such factors as whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . . ." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

Once again, the Class Members' common factual allegations and legal theory – that Defendants compensated them on a flat daily basis and thus failed to pay them overtime compensation when they worked over forty hours in a week – predominate over any variations among Class Members. Moreover, settlement damages are uniformly calculated by applying a mechanical formula to the class as a whole.

8

Class adjudication of this case is also superior to individual adjudication because it will conserve judicial resources and avoid inconsistent judgments. Further, given the expense of litigation and the relatively small size of numerous individual claims, many members of the class simply could not afford to pursue redress absent class treatment. Given these facts, a class action is superior to other available methods of adjudicating this controversy.

Finally, in numerous similar wage and hour actions, courts within the Third Circuit have granted class certification for purposes of effectuating settlement. *See Bredbenner v Liberty Travel, Inc.*, 2011 US Dist LEXIS 38663 (DNJ 2011); *Bernhard v TD Bank, N.A.*, 2009 US Dist LEXIS 92308 (D.N.J. 2009); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 US Dist LEXIS 60790 (ED. Pa. 2009); *Lenahan v Sears, Roebuck & Co.*, 2006 US Dist LEXIS 60307 (D.N.J. 2006). Accordingly, Plaintiffs' respectfully request that the Court grant class certification for purposes of settlement.

## II.     The Proposed Settlement Is Entitled to an Initial Presumption of Fairness

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e).  As explained by Judge Falk in *Bredbenner*:

> A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors, 55 F.3d at 785* (citing 2 Newberg on Class Actions § 11.41 at 11-88 (3d ed. 1992)); Manual for Complex Litigation (Third) § 30.42, at 238 (1997). This presumption may attach even where, as here, settlement negotiations precede class certification. *See In re Warfarin*, 391 F.3d at 535.

*See Bredbenner*, at 29-30.

Here, Class Counsel is highly experience in handling wage and hour class actions.  In addition, the class settlement was a product of approximately nine months of negotiations,

9

culminating at a mediation before Magistrate Judge Mark Falk.  *Milliron v T-Mobile USA, Inc.*, 2009 US Dist LEXIS 101201, at *5 (D.N.J. 2009) (finding presumption applies when negotiations occurred before federal judge). The settlement formula and allocations were based on the review of over a thousand pages of payroll and route records.  The parties engaged in substantial discovery and motion practice on the applicability of the Motor Carrier Act exemption.  Most importantly, not a single Class Member objected or affirmatively opted-out of the settlement.  Accordingly, the instant settlement is entitled to an initial presumption of fairness.

**III.      The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *Girsh v Jepson*, 521 F2d 153, 157 (3d Cir. 1975). The Girsch factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Bredbenner*, at 31-32 (*citing Girsh*).

These factors "embody a substantive inquiry into the terms of the settlement itself and a procedural inquiry into the negotiation process."  *Bredbenner*, at 32-33 (*citing Prudential II*, 148 F.3d at 324).

**1.      Litigation Through Trial Would be Complex, Costly, and Long (*Girsh* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  Indeed, "[t]his factor is intended to 'capture the probable cost, in both time and money, of continued litigation.'"

10

*Bredbenner*, at 29-30 (*quoting In re Gen. Motors*, 55 F.3d at 812). This case is no exception, with over 700 Class Members and claims under federal and state law.

Further litigation here would cause additional expense and delay. Here, the Court bifurcated discovery, ordering discovery on the applicability of the Motor Carrier Act prior engaging in pre-class certification discovery or other merits discovery. Accordingly, additional merits and pre-class certification discovery would be required. In addition, Plaintiffs would likely file a motion for class certification, and Defendants would likely file a motion to decertify the collective action. The Parties likely would file cross-motions for summary judgment. If the Court denied the motions, a fact-intensive trial would necessarily follow. Indeed, the applicability of the Motor Carrier Act is still an issue that would need to be resolved at trial. This would require the Court to determine whether waste is property, and whether the waste transported by Plaintiffs was transported across state lines within the practical continuity of movement. A trial would clearly be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. The instant settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. *See Bredbenner*, at 34 (By reaching a settlement at this stage of litigation, the parties "avoid the costs and risks of a lengthy and complex trial.") (*quoting Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).

## 2.   **The Reaction of the Class Has Been Positive (*Girsh* Factor 2)**

The second factor measures "whether members of the class actually support the settlement." *Bredbenner*, at 34 (*citing Prudential II*, 148 F.3d at 318). "Courts generally assume that silence constitutes 'tacit consent' to the settlement terms." *Bredbenner*, at 34 (*quoting Bell At. V. Bolger*, 2 F.3d 1304, 1314 n. 15 (3d Cir. 1993). Accordingly, "courts look to the 'number and vociferousness of the objectors.'" *Bredbenner*, at 34 (*quoting In re Gen. Motors*, 55 F.3d

11

812).

Here, the Court approved Notices sent to Class Members that included the allocation formula, a clear and informative summary about the claims in this case, and specific instructions on how to object or opt-out of the settlement. Each class member that opted to participate in the settlement received an additional notification of the exact settlement allocation they would receive and exact amount that would be deducted for attorneys' fees and service awards. Ambinder Decl., Exhibit B. To date, not a single Class Member has opted out or objected to the terms of the settlement.  Accordingly, the reaction of the Class Members in this case strongly supports a finding in favor of approving the instant settlement.

### 3.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Girsh* Factor 3)

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The Parties' discovery here meets this standard. Plaintiffs' Counsel conducted an investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. Substantial discovery was conducted in relation to the Motor Carrier Act affirmative defense. As part of Plaintiffs' investigation, Plaintiffs' Counsel interviewed and obtained declarations from Plaintiffs and numerous Class Members. Class Counsel reviewed data and thousands of documents produced by Defendants, and some opt-in Plaintiffs, including payroll records and Class Members' route assignments.  With extensive discovery and due diligence, Class Counsel possessed sufficient information to assess the relative strengths and weaknesses of the case in reaching a fair settlement.

12

**4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Girsh* Factors 4 and 5)**

This factor measures the "'possible risks of litigation' by balancing the likelihood of success, and the potential damages award, against the immediate benefits offered by settlement." *Bredbenner*, at 37 (*citing Prudential II*, 148 F.3d at 319).  In weighing these considerations, "the Court should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Id*. (citations omitted). Here, as in *Bredbenner*, the immediate cash payout provided by the class settlement offers a substantial benefit over the many risks and costs Plaintiffs would face in litigating their claims to conclusion.

First and foremost, the possibility that Plaintiffs are exempt from overtime compensation pursuant to the Motor Carrier Act is a substantial risk to continuing litigation.  Although Defendants were unable to establish the applicability of the Motor Carrier Act for purposes of summary judgment, Defendants are not precluded from raising this affirmative defense at trial. At trial, however, Defendants will not have to overcome the stringent burdens associated with a summary judgment motion, namely, establishing that no disputed issues of material fact exist. If Defendants establish that the Motor Carrier Act applies, Plaintiffs will receive nothing. Accordingly, the existence of this outstanding issue poses a substantial risk to continuing litigation for Plaintiffs.

Notwithstanding Defendants' affirmative defenses, in order to successfully litigate this case, Plaintiffs will have to establish liability and damages. This will entail showing that Plaintiffs worked more than forty hours in a week without receiving one and one-half times their regular rates of pay.  In addition it will entail establishing that Defendants acted willfully, which will extend the FLSA's statute of limitations from two years to three years.  Under the terms of the settlement agreement, Class Members are already receiving the benefit of a three-year

13

limitations period on their FLSA claims.  Accordingly, the instant settlement, which provides an immediate cash payout, offers a significant benefit to Class Members, especially in the face of the foregoing considerable risks.

5.   **Maintaining the Class Through Trial Would Not Be Simple (*Girsh* Factor 6)**

The risk of obtaining certification and maintaining it through trial is also present. The Parties anticipate that a determination on class certification would be reached only after further discovery and exhaustive briefing. In opposing class certification, Defendants would likely argue that individualized questions preclude class certification. Settlement eliminates the risk, expense, and delay that permeates such processes. In addition, after the close of discovery, Defendants would likely challenge the Court's determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b). Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

6.   **Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Girsh* Factor 7)**

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so does not preclude a finding that the settlement is fair and reasonable.  *See Bredbenner*, at 41 ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts."). Here, the settlement allocations were based on extensive review and analysis of payroll and route records produced by the Defendants, making it unlikely that Class Members would be entitled to more even if Defendants had the ability to pay more. Thus, this factor is neutral and does not preclude the Court from granting final approval.

7.   **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Girsh* Factors 8 and 9)**

To determine whether a settlement amount is reasonable, "the Court analyzes the

reasonableness of the settlement against the best possible recovery and the risks the parties would face if the case went to trial." *Bredbenner*, at 43 (*citing Prudential II*, 148 F.3d at 322). In cases where monetary relief is sought, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *See Bredbenner*, at 43 (*quoting In re Gen. Motors*, 55 F.3d at 806 (quoting Manual for Complex Litigation (Second)) § 30.44, at 252 (1985))). Precise value determinations, however, are not necessary. *See id. (citing In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 355 (3d Cir. 2010) (*citing In re Warfarin*, 391 F.3d at 538).

Here, Defendants have agreed to pay $912,239.18 to Participating Claimants. This amount represents the sum of the settlement allocations designated for each Participating Claimant.[2] The negotiations over and ultimate basis for the formula for calculating individual settlement allocations turned on the number of days and hours each Class Member worked each week. Named Plaintiffs alleged in the complaint that they typically worked nine to eleven hours per day, five to six days per week. Defendants vigorously maintained that many Class Members were part-time workers, never working even close to forty hours in a week. Defendants further vigorously maintained that its full-time workers did not work overtime at all, typically working between seven and eight hours per day five days per week.

After interviewing numerous Class Members and reviewing over one thousand pages in payroll and route records produced by Defendants, the parties agreed that the settlement allocations for Full-Time Participating Class Members would be based on a nine hour work day and five day workweek.  Meaning, Full-Time Participating Class Members will receive one-half their regular rates of pay (half-time overtime premium) for five hours for each week worked

---

[2] The formula for calculating individual settlement allocations was included in both notices to the class and can be found in the Ambinder Decl. at ¶ 15.

during the relevant period.[3]

Rather than receiving damages for each week worked, Part-Time Participating Class Members received damages only in weeks when they worked five days or more. For a five day workweek, Part-Time Participating Class Members received five hours pay at one-half their regular rate of pay for that week. For workweeks longer than five days, Part-Time Participating Class Members received ten hours pay at one-half their regular rate of pay for that week.

Accordingly, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective and succeeded on all claims at trial, the substantial settlement sum paid by the Defendants represents considerable value given the attendant risks of litigation.

**8.    Additional Factors**

Additional factors set for the by the Third Circuit in *Prudential* also support a finding in favor of approving the instant settlement. *Bredbenner,* at 32 (some of the *Prudential* factors include the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, extent of discovery on the merits, whether class members were accorded the right to opt out, whether attorneys' fees are reasonable, whether the procedure for processing individual claims under the settlement is fair and reasonable).

First, as in *Bredbenner*, the underlying substantive issues have nearly fully matured, as Defendants ceased compensating its workers on a flat salary basis in or about March 2014.  As mentioned earlier, Plaintiffs' counsel is highly experienced in the prosecution of wage and hour actions.   The parties have engaged in extensive discovery, including discovery on issues surrounding the Motor Carrier Act. The parties have also exchanged additional documents for purposes of settlement, including payroll and route records, which served as the basis for Class

---

[3] In a 45 hour week, five hours represents 11.11% of the total hours. Since the overtime premium owed is equal to one-half the regular rate of pay, each Full-Time Participating Class Member received 5.56% of their gross earnings each week.

Members' individual settlement allocations.

In sum, the factors set forth in *Girsch* and *Prudential* support a finding in favor of approval of the instant settlement.  Accordingly, Plaintiffs' respectfully request that the Court approve the settlement and dismiss this action with prejudice.

## IV.      <u>Final Certification of the FLSA Collective</u>

Plaintiffs also request that the Court grant final certification of the FLSA Collective for settlement purposes, consisting of all individuals who worked as drivers, driver's helpers, waste collectors, and loaders for Defendants at any time from June 14, 2009 through March 14, 2014.

To certify a case as a collective action under the FLSA, the Court must determine that employees in the class are "similarly situated," within the meaning of § 16(b) of the Act. *See Sperling v. Hoffman-La Roche, Inc.*, 862 F.2d 439, 444 (3d Cir. 1888), aff'd, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). Courts in this district regularly use factors set forth in *Lusardi v. Xerox Corp. (Lusardi I)*, 118 F.R.D. 351 (D.N.J. 1987) to reach a final determination on class certification under the FLSA. *See, e.g., Bredbenner,* at 47-49 (citing examples of decisions). The *Lusardi* factors include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Lusardi I,* 118 F.R.D. at 359, vacated in part sub nom. *Lusardi v. Lechner (Lusardi II)*, 855 F.2d 1062 (3d Cir. 1988). This list is neither exhaustive nor mandatory to grant certification. *Bredbenner,* at 49 (*citing Ruehl*, 500 F.3d at 388 n.17).  The Court in *Bredbenner* also found that "since the analysis required for final certification, largely overlaps with class certification analsyis under Federal Rules of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing." *Bredbenner,* at 49 (citations and quotations omitted).

17

Here, as in *Bredbenner*, the factual circumstances underlying the claims of each putative collective member are very similar. Each worked as a driver or driver's helper for Defendants, each worked more than forty hours in a week, each was allegedly paid a flat weekly salary, and each seek the same relief under the FLSA. Accordingly, the collective, as a whole, is similarly situated to the class representatives. Any individualized defenses that would interfere with final certification are moot, as the case need only be certified in order to effectual settlement.

In addition, the standard for approving class-wide settlements under the FLSA are more lenient than under Rule 23 class actions. Indeed, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," and thus, FLSA collective action settlements do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Instead, courts approve FLSA settlements as long as they are reached as a result of contested litigation to resolve *bona fide* disputes. *See McMahon v Olivier Cheng Catering & Events, LLC*, 2010 US Dist LEXIS 18913, at 15 (S.D.N.Y. 2010).

Finally, this settlement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations. Just as in *Bredbenner*, the dispute in this case is over the hours worked and compensation due. As such, the instant settlement resolves a bona fide dispute and should be certified as a collective to facilitate final approval of the settlement.

### **APPLICATION FOR ATTORNEYS' FEES AND SERVICE AWARDS**

Class Counsel submits this unopposed application for approval of attorneys' fees and costs and for approval of service awards. Class Counsel seek $300,000.00 to cover attorneys' fees and costs. Class Counsel also seek approval of service awards in the amount of $7,500

18

each for Named Plaintiffs Marlon Barrios and Angel Morales.

For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case. Class Counsel also respectfully submit that the service awards for Plaintiffs are proper in recognition of the services they rendered on behalf of the class.

## I.     Class Counsel IS Entitled To a Reasonable Fee of 31.5% of the Settlement Fund

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the class. The Stipulation, which has been preliminarily approved by the Court, provides that Class Counsel may apply for no more than $300,000.00 for professional fees, costs, and expenses. *See* Stipulation ¶ 3.2(A), at Docket No. 107, Document No. 2. Fifteen percent of the approved fee will be deducted from each Participating Claimants' gross individual settlement amount.  Meaning, $136,835.88 will be paid from the settlement fund. The remainder, which amounts to $163,164.12, will be paid by Defendants.

Class Counsel incurred $12,576.31 in costs and expenses.  Accordingly, the requested fee is equal to $287,037.33. The total requested fee amounts to 31.5% of the of the settlement fund, which is well below the typical range approved by courts in similar cases. *See Bredbenner*, at 59-61 (citing cases).

## II.     The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Third Circuit

In wage and hour class action lawsuits, the prevailing methodology in the Third Circuit is to employ the percentage of recovery method to award attorneys' fees in common fund cases. *Bredbenner*, at *52-53 (*citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F3d 768, 821 (3d Cir 1995)).  The Third Circuit favors percentage of recovery in common fund cases because it permits courts to grant fees in a manner that rewards counsel for its success and

penalizes it for failures.  *In re Rite Aid Corp. Sec. Litig.*, 396 F3d 294, 300 (3d Cir. 2005).

The Third Circuit in *Gunter v. Ridgewood Energy Corp.* set forth several factors for assessing the appropriateness of attorneys' fees: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7)  the awards in similar cases. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citations omitted).

### 1.   Size of the Fund and Number of Persons Benefitted

In this case, the substantial settlement fund is equal to over $900,000 that will be paid to 155 Participating Claimants.   Although the fund in this case is not a "mega-fund," it is nevertheless substantial. This settlement also represents a significant benefit considering the risk that litigating this case through trial could have resulted in a finding of no liability to the Defendants.   Indeed, as explained *supra* (pp. 15-16), Participating Claimants are receiving significant portion of all of the actual damages they were allegedly owed if they prevailed at trial, including liquidated damages to qualifying Participating Claimants.  The quality of the settlement and benefit to Participating Claimants supports a finding in favor of approving this settlement.

### 2.   Presence or Absence of Substantial Objections

The notice to the Class Members, which was preliminarily approved by the Court, clearly explains the obligations on Participating Claimants to contribute to Class Counsel's fee. Each Participating Claimant also received a second notice explicitly outlining their gross settlement amount and the amount that will be deducted for attorneys' fees.  To date, no Class Member has objected to the requested attorneys' fees, expense reimbursement or method of disbursement.

Ambinder Decl. ¶ 34. The lack of objections to Class Counsel's fee and cost reimbursement request is indicative of the reasonableness of the requested award and weighs in favor of approving it. *Bredbenner*, at 52 (D.N.J. 2011) (*citing Lenahan v Sears, Roebuck & Co.*, 2006 US Dist LEXIS 60307 (D.N.J. 2006)).

### 3.   Skill and Efficiency of Class Counsel

The skill and efficiency of class counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Bredbenner,* at *56-57 (citations omitted).

Here, Class Counsel is highly experienced in handling wage and hour class actions, and handled this complex class action in kind.  Ambinder Decl., ¶¶ 24, 43. Specifically, Class Counsel was victorious on its conditional certification motion and motion to amend the pleadings to add a Defendant.  Class Counsel also successfully opposed Defendants' motions to dismiss and summary judgment. Class Counsel engaged in extensive Motor Carrier Act discovery, which required review of thousands of records, including waste management plans for numerous counties in New Jersey. Ambinder Decl., ¶ 37. There were also several discovery disputes that required Court intervention. Despite the substantial motion practice and discovery, the parties resolved this action within three years from commencement. The favorable and expeditious settlement under these circumstances is testament to the skill and expertise of Class Counsel in handling the instant action.

### 4.   Hours Worked and Risk of Non-Payment

Courts consider the risk of non-payment in light of the Defendant's ability to satisfy an adverse judgment, *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 152 (D.N.J. 2004), or the risk of establishing liability at trial. *In re Cendant Corp. Litig.*, 264 F.3d 201, 339 (3d Cir 2001).

Here, Class Counsel has no reason to believe that Defendants cannot satisfy the adverse judgment.  However, Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Ambinder Decl. ¶ 41. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs would have to overcome Defendants' Motor Carrier Act affirmative defense. If Defendants are successful on this affirmative defense, Defendants would be completely relieved of liability. Accordingly, a trial on the merits would involve significant risks for Class Members and Class Counsel as to both liability and damages. While Class Counsel believes that it can ultimately establish both liability and damages, this would require significant factual development. Class Counsel is experienced and realistic, and understands that the resolution of liability issues are inherently uncertain in terms of outcome and duration.

Class counsel has expended over 900 hours in bringing this case to resolution.  Ambinder Decl., ¶ 38. The hours recorded were incurred investigating claims, interviewing putative class members, reviewing documents produced by Defendants, drafting and opposing motions and letters to the court, and engaging in substantial settlement negotiations. Ambinder Decl., ¶ 37.[4]

---

[4] Each hour was contemporaneously recorded at the time the work was performed.  To the extent the Court is not satisfied with Class Counsel's declarations, Class Counsel would be happy to submit the nearly 40 pages of billing records.

The complexity of the issues before the Court, coupled with the risk of non-payment, supports a finding that the fee requested is reasonable.

### 5.  **Awards in Similar Cases**

In addressing this factors, "the Court should (1) compare the actual award requested to awards in comparable settlements, and (2) ensure that the award is consistent with what an attorney would have likely received if the fee was negotiated on the open market." *Bredbenner*, at 59-60 (citations omitted). In common fund cases, fee awards generally range from 19% to 45% of the settlement fund. *Bredbenner*, at 59-60 (*citing In re Gen. Motors*, 55 F.3d at 822 (*citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990))).

The fee award request in this case is approximately 31.5% percent of the settlement fund, which is within the proper range and consistent with fee awards in similar wage and hour cases within the Third Circuit. *Bredbenner*, at 59-60 (citing numerous cases). The percentage award in this case is also consistent with prevailing contingent fee rates in non-class action cases. *Id*.

### 6.  **Lodestar Cross-Check**

In determining the lodestar for cross-check, the court is not required to engage in a "full-blown lodestar inquiry," or "mathematical precision." *Bredbenner*, at 61-62 (citations omitted); *Dewey v Volkswagen of Am.*, 728 F Supp 2d 546, 592 (D.N.J. 2010) (Where there have been no objects to the lodestar calculations, a full-blown lodestar analysis is unnecessary and inefficient use of judicial resources.).

To date, Class Counsel's attorneys and paralegals have worked 900.83 hours for a total of $213,281.74. Ambinder Decl., ¶ 38. The fee request under the percentage of recovery method represents 1.35 times the lodestar. The Third Circuit has approved a cross-check multiplier of 3. *In re Cendant Corp. Litig.*, 264 F3d 201, 256 (3d Cir. 2001). The Court in *Bredbenner* approved a cross-check multiplier of 1.88. A multiplier of 1.35 is entirely reasonable and reflects the risks

assumed by assumed by Class Counsel in taking this case on a contingency basis and the level of skill brought to this complex litigation. Accordingly, Class Counsel respectfully requests that the Court find the requested fee proper even under the lodestar method.

### 7.  Reimbursement of Expenses

Class Counsel also requests reimbursement of $12,576.31 in out-of-pocket expenses as. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted).  Here, Class Counsel incurred actual expenses of $2,474.31 for costs such as court and process server fees, postage and courier fees, costs to the administrator for sending notice and processing consent to join forms from the FLSA collective, transportation, discovery costs, photocopies, and legal research. Ambinder Decl. ¶ 44. Class Counsel's request for costs also includes a payment to the settlement claims administrator, which amounts to $10,102.00. Ambinder Decl. ¶ 44. These expenses were incidental and necessary to the representation of Plaintiffs and the Class and adequately recorded. *Id.*

### III.  The Requested Service Awards Are Reasonable and Should Be Approved

Service awards are fairly common in class action lawsuits involving a common fund for distribution to the class. *Bredbenner*, at 63.  The Service Awards that the Plaintiffs request are reasonable given the significant contributions that Named Plaintiffs made to the prosecution and resolution of the lawsuit. Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, *7 (S.D.N.Y 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation,

he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).  The purpose of service awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation,' id., and to 'reward the public service' of contributing to the enforcement of mandatory laws." *Bredbenner,* at 63-64 (*citing In re Cendant*, 232 F. Supp. 2d at 344 (*citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009))).

Here, Named Plaintiffs Barrios and Morales took a significant risk. In the workplace context, where workers are often blacklisted if they are considered "trouble makers," plaintiffs who sue their employers are particularly vulnerable to retaliation. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at 14 (S.D.N.Y. 2012) (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees"); *Guippone v. BH S&B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."). Even though Named Plaintiffs no longer work for Defendants, they still incurred a risk in commencing this action. *Guippone*, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Moreover, Named Plaintiffs Barrios and Morales also contributed a significant amount of time and effort to the case by providing Class Counsel with detailed factual information regarding their job duties, the job duties of their co-workers, Defendants' policies, and other

information relevant to their claims and the claims of the putative class. They also regularly made themselves available to communicate with Class Counsel when necessary, including throughout the settlement process, attending the mediation before Judge Mark Falk, and relaying messages to class members.  In addition, Named Plaintiffs both regularly followed up with Class Counsel to check on the status of the case and ensure that it was moving toward resolution.  The benefits of the class wide settlement agreement are as a direct result of the services rendered by the Named Plaintiffs.

The requested Service Awards of $7,500 to Named Plaintiffs Barrios and Morales are well within the awards regularly provided in similar cases. *Bredbenner*, 66-67 (citing cases of awards ranging between $5,000 and $30,000); *see also* 4 Newberg on Class Actions § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).  In addition, the service awards amount to approximately 1.6% of the total recovery, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at 9 (S.D.N.Y. 2011); *Parker v. Jekyll & Hyde Entm't Holdings*, LLC, 2010 WL 532960, at 2 (S.D.N.Y. 2010) (finding that service awards totaling 11% of the total recovery are reasonable).

Most importantly, the notice to each Class Member advised them that a portion of their settlement allocation will be distributed as a service award to the Named Plaintiffs.  In addition, a second notice was distributed to all Participating Claimants that explicitly outlined their gross settlement allocation and the exact amount that will be deducted from their gross settlement allocation for attorneys' service awards. The fact that not one Participating Claimant has objected to the service award strongly supports a finding that the service award is fair, reasonable, and should be approved by the Court.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) approve the settlement as fair, reasonable, and adequate for both Rule 23 Class Members and FLSA Collective Members, (2) bind all Rule 23 Class Members who have not timely opted out to the Released State Law Claims as set forth in the Stipulation, (3) award Class Counsel attorneys' fees and costs in the amount equal to $300,000.00, (4) award services awards to Named Plaintiffs Marlon Barrios and Angel Morales in an amount equal to $7,500.00 each ($15,000 total), and (5) dismiss the Litigation with prejudice.

Dated: New York, New York
      January 6, 2016

Respectfully submitted,

VIRGINIA & AMBINDER, LLP

/s/ Lloyd R. Ambinder, Esq.
Jack L. Newhouse, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel:    (212) 943-9080
lambinder@vandallp.com

*Attorneys for Plaintiffs and the Settlement Class*